## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

THOMAS C. IOELE,

                                          Plaintiff,

                                                            Case No.

vs.

                                                            Removed from Monroe County

ONSTAR CORPORATION and ONSTAR,
LLC,

                                          Defendant(s).

### NOTICE OF REMOVAL

Please take notice that Defendant OnStar, LLC, (OnStar), by its undersigned counsel, hereby removes the above-captioned action from the Supreme Court of the State of New York, in and for the County of Monroe, to the United States District Court for the Western District of New York. Removal is warranted under 28 U.S.C. § 1441 because this is a diversity action over which this Court has original jurisdiction under 28 U.S.C. §§ 1332, 1441 and 1446. In support of this Notice of Removal, OnStar states and alleges as follows:

1.      Plaintiff Thomas C. Ioele (Plaintiff) commenced this action titled *Thomas C. Ioele vs. OnStar Corporation and OnStar, LLC* by filing a Complaint with the Supreme Court of Monroe County, New York. *See* Complaint (Ex. 1).

2.      Pursuant to 28 U.S.C. § 1446(a), OnStar advises this Court that no other process, pleadings, or orders have been served upon OnStar in the state court action as of the date of the filing of this Notice of Removal.

3.      This action involves allegations regarding OnStar's service. Plaintiff alleges causes of action sounding in negligence, negligent training, and fraud, and seeks compensatory and punitive damages.

4.      As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because OnStar has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this diversity action.

## II.      ONSTAR HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

5.      OnStar was served with the Complaint via certified mail on March 28, 2011. *See* Service of Process Transmittal (Ex. 2). Plaintiff originally served the statutory agent, the New York State Secretary of State, on March 16, 2011. *See* State of New York Notice (Ex. 3). Because this Notice is being filed within 30 days of service of the initial pleading upon OnStar, it is timely under 28 U.S.C. § 1446(b).

6.      Pursuant to 28 U.S.C. § 112(d), the United States District Court for the Western District of New York is the appropriate court for filing a Notice of Removal from the Supreme Court of Monroe County, New York, where Plaintiff filed this action.

7.      Pursuant to 28 U.S.C. § 1446(d), OnStar shall give Plaintiff written notice of the filing of this Notice of Removal, and OnStar shall file with the County Clerk of the Supreme Court of Monroe County, New York, written notice of having filed this Notice of Removal and shall attach thereto a copy of this Notice of Removal.

## II.      REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PUSUANT TO 28 U.S.C. §§ 1332 AND 1441

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.   The Amount in Controversy Requirement is Satisfied

9.   Upon information and belief, the matter in controversy exceeds $75,000 in value exclusive of interest and costs, as Plaintiff seeks damages for injuries that are long-lasting or permanent in nature. *See* Complaint at ¶ 24 (Ex. 1). Plaintiff additionally makes a claim for punitive damages. *Id.* at Request for Relief.

10.   To prove that the amount in controversy requirement has been met under 28 U.S.C. § 1332(a), the removing party must prove "that is appears to a 'reasonable probability' that the claim is in excess of $75,000." *Bellocchio v. Enodis Corp*, 499 F. Supp. 2d 254, 255 (E.D.N.Y. 2007) (*citing United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 303-04 (2d Cir. 1994)). While this "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability, it does not require a defendant to look beyond the initial pleading for facts giving rise to removability." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. N.Y. 2001).

11.   Based on Plaintiff's allegations and claims for compensatory and punitive damages, the amount in controversy here is in excess of $75,000, the jurisdictional amount required under 28 U.S.C. § 1332(a), and removal is thus proper.

### B.   There Is Complete Diversity of Citizenship

12.   There is complete diversity as between Plaintiff and OnStar.

13.   Based on the allegations of the Complaint, OnStar is informed and believes that Plaintiff is a citizen of New York, residing in the County of Monroe, New York. *See* Complaint at ¶ 1 (Ex. 1).

14.   OnStar, LLC, is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Michigan and, therefore, is a citizen of Delaware and Michigan for purposes of determining diversity of citizenship.  28 U.S.C. § 1332(c)(1).

15.   In November 2008, OnStar changed its corporate organization from a corporation to a limited liability company.  As a result of this transaction, OnStar Corporation changed its name to OnStar LLC.

16.   No admission of fact, law, or liability is intended by this Notice of Removal, and OnStar expressly reserves all defenses, affirmative defenses, and motions.

Based on the foregoing, OnStar respectfully removes this action from the Supreme Court of Monroe County, New York, to this Court Pursuant to 28 U.S.C. 1441.

Dated: April 14, 2011

Erin Mead, Esq.

# EXHIBIT 1

STATE OF NEW YORK
SUPREME COURT     COUNTY OF MONROE

THOMAS C. IOELE,
218 West Main Street
Pittsford, New York 14534

                    Plaintiff,

        vs.

ONSTAR CORPORATION,
400 Renaissance Center
Detroit, Michigan 48243

and

ONSTAR, LLC
400 Renaissance Center
Detroit, Michigan 48243

                    Defendants,

Basis of venue is the Plaintiff's residence.

**SUMMONS**

Index No.: 11-2786

Venue is based on CPLR §§ 504 and 506.

TO THE ABOVE-NAMED DEFENDANT:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York.   In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED:      March 8, 2011
            Rochester, New York

                    WOODS OVIATT GILMAN LLP

                    By: _____
                    Donald W. O'Brien, Jr., Esq.
                    *Attorneys for Plaintiff*
                    700 Crossroads Building
                    2 State Street
                    Rochester, New York 14614
                    585.987.2800

{1211958:}

STATE OF NEW YORK
SUPREME COURT        COUNTY OF MONROE

THOMAS C. IOELE,

                     Plaintiff,

      vs.

ONSTAR CORPORATION and ONSTAR, LLC,

                   Defendants,

COMPLAINT

Index No.: 11-27866

      Plaintiff, Thomas C. Ioele, ("plaintiff"), by his attorneys, Woods Oviatt Gilman LLP, for his complaint against the defendants herein, alleges as follows:

### THE PARTIES

    1.     Plaintiff is, and at all times hereinafter mentioned was, a resident of the county of Monroe and State of New York.

    2.     Upon information and belief, defendant Onstar Corporation, is, and at all times hereinafter mentioned was, a corporation organized and existing under the laws under the State of Michigan with an office for the transaction of business located at 400 Renaissance Center, Detroit, Michigan.

    3.     Upon information and belief, defendant, Onstar, LLC, is, and at all times hereinafter mentioned was, a limited liability company organized and existing under the laws of the State of Delaware with an office for the transaction of business located at 400 Renaissance Center, Detroit, Michigan.

    4.     Upon information and belief, defendants, Onstar Corporation and Onstar, LLC (collectively referred to as "Onstar") are wholly owned subsidiaries or are otherwise owned and

managed by General Motors Corporation, a domestic manufacturer of automobiles, trucks, other motor vehicles.

5. Upon information and belief, defendants, Onstar Corporation and Onstar, LLC, are authorized to conduct business, or are conducting business, in the State of New York, sufficient to confer personal jurisdiction on this Court over the defendants.

### THE ONSTAR SYSTEM

6. In conjunction with the advertising, marketing and sale of motor vehicles manufactured by General Motors Corporation, Onstar offers an in-vehicle safety, security and communications system throughout the United States and Canada.

7. In connection with the advertising, marketing and sale of this system, also referred to as "Onstar,", Onstar offers various plans and services, including roadside vehicle assistance, vehicle diagnostics, "turn-by-turn" navigation and emergency assistance. In general, Onstar charges a monthly fee for these various service plans.

8. In connection with the advertising, marketing and sale its various service plans, Onstar emphasizes its ability to keep its users safe from a wide variety of risks and dangers. On its website, www.onstar.com, Onstar gives the following assurances:

- **EMERGENCY & SECURITY**: Whether you've been in a crash, or just locked the keys in your car, Onstar is there for you when you need us most.

- **EXPERIENCE ONSTAR**: Onstar is the world's most comprehensive in-vehicle safety, security and communications service. We can keep you safely connected in ways you never thought possible.

- **ONSTAR EXPLAINED**: Onstar is the in-vehicle safety and security system created to help protect you and your family on the road. Onstar's innovated three-button system offers:
  - 24-hour access to expertly trained, caring Advisors
  - A connection to emergency assistance

- Access to Onstar Hand-Free Calling

- **EMERGENCY SERVICES:** If you or someone else needs emergency help, a live Advisor is one button push away and you can direct emergency support to your exact location.

- **HELP US HELP YOU:** Provide us with your emergency contact information so we can provide emergency responders with information, if necessary.

9.  Actual purchasers of Onstar equipment and service plans are given further assurances as an inducement to continue using the Onstar system. In particular, purchasers of the Onstar system are led to believe that, by pushing the red emergency button, trained advisors will immediately respond to any emergency situation and facilitate prompt action by first responders:

- **Red Emergency Button:** In an emergency, push this button to get help from specially trained Onstar Emergency Advisors.
    - If you are having an emergency or if you are in an accident.
    - To be a Good Samaritan or to respond to an AMBER Alert.

  **When to Push the Red Emergency Button:** This is the button to use in an emergency or life-threatening situation. When you push the emergency button, a high-priority call with your GPS location is placed to the Onstar Emergency Services team.

  You will hear a chime followed by the words *"Connecting to Onstar Emergency."* A specially trained Onstar Advisor can pinpoint your location and try to find out what kind of assistance you require. Then, if needed, they can call nearby emergency service providers who can dispatch ambulance, fire, police or other emergency services to your location. The advisors will stay with you until help arrives, or as long as you need them to.

- **Pushing the Emergency Button:** The Onstar buttons are designed for simple and easy access. When you are in an Emergency situation, all you have to do is make one simple push of the red button...your vehicle and your Onstar system are designed so that when you push the emergency button, a high priority call with your current GPS location is sent to the Onstar Emergency Team. These Advisors are trained to respond to emergency situations and will

work with local emergency providers to get help to you. The
Emergency Advisors are standing by every second of every day to
respond to any situation.

10.     In making these representations and offering these assurances, Onstar seeks to induce

purchasers and lessees of motor vehicles to purchase the Onstar system and subscribe to its various

service plans, including its "safe & sound" plan at a current cost of approximately Two Hundred

Dollars ($200 00) per year. The Onstar website promotes its "Safe & Sound" plan by stating, among

other things, "[t]his plan allows you to enjoy the peace of mind that comes with knowing that you

and your loved ones are fully protected on the road." In making these representations and in featuring

in its national advertising personal stories from Onstar users to whom emergency assistance was

actually provided, Onstar seeks to induce prospective users to purchase its system and to lull them

into a false sense of security that they will be "fully protected on the road."

## THE PLAINTIFF'S EMERGENCY

11.     On or about July 25, 2008, the plaintiff purchased a 2008 Buick Enclave from the

Dorschel Automotive Group in Rochester, New York.

12.     As of November 20, 2010, plaintiff was a user of the Onstar "Safe & Sound" plan,

having purchased a General Motors vehicle with an Onstar system.

13.     On that date, while at his home 45 Hunter's Pointe in Pittsford, New York, the plaintiff

suffered a spontaneous extra-cranial hemorrhage and recognized at once the seriousness of his

condition.

14.     Plaintiff left his home immediately and, as he backed out of the driveway, contacted

Onstar by pressing the emergency button his Onstar system.

15.     Within seconds of leaving his home, an Onstar representative answered his call with

the greeting "Onstar Center." Mr. Ioele informed the Onstar Advisor, in words or substance, that he

had sustained a trauma to the head, that he was bleeding profusely and that he was driving to the

Pittsford Fire Department in Pittsford, New York. Mr. Ioele advised the Onstar Advisor that he wanted him to contact 911 and direct an ambulance to the Pittsford Fire Department in the Village of Pittsford so that the ambulance would be there when he arrived in order to transport him to the hospital.

16. The Onstar Advisor informed the plaintiff that he was unable to locate him "on the system" and asked the plaintiff to stop his vehicle and get a house number from the nearest residence so that he could attempt to locate the plaintiff.

17. As the plaintiff's situation grew more ominous, his appeals to the Onstar Advisor became more urgent.

18. The plaintiff told the Onstar Advisor that he was "desperate" and he implored him repeatedly to contact emergency services and direct an ambulance to the Pittsford Fire Department where plaintiff was then headed. The Onstar Advisor ignored the information which the plaintiff conveyed as to the gravity of his situation, continued to ask the plaintiff to stop his vehicle and get an address number from the closest residence or business and failed and/or refused to contact 911 to initiate request that an ambulance be sent to the Pittsford Fire Department.

19. When the plaintiff arrived at the Pittsford Fire Department his situation was grave and life-threatening; he had lost a significant amount of blood from the hemorrhage and was struggling to remain calm and lucid in order to secure emergency assistance, since the Onstar Advisor had done nothing to assist him. Ultimately, passers-by rendered assistance to the plaintiff and contacted 911 so that an ambulance could be sent to the scene to assist the plaintiff and transport him to the hospital.

20. Emergency assistance was rendered to the plaintiff at the Pittsford Fire Department in an effort to stabilize him and prevent further deterioration of his condition.

During the trip to the hospital, the plaintiff remained conscious and attempted to provide ambulance personnel with his medical history and describe what had ensued since he first noticed the hemorrhage.

21    The plaintiff was taken to the University of Rochester Strong Memorial Hospital Emergency Department ("Strong") where he was cared for by a team of medical professionals. The physician with primary responsibility for the plaintiff s care in the Emergency Department, Michael Lippe, M.D., acknowledged to the plaintiff that his condition was extremely grave, that he had lost a significant amount of blood and that his survival was a "50/50" proposition.  By the time he reached the hospital, plaintiff s blood pressure and heart rate were perilously low, his extremities were cold, he was experiencing chest pain and Dr. Lippe implored him to remain awake and alert as it could mean the difference between life and death.

22.    The delay on the part of Onstar and its "expertly Trained Advisor" in providing emergency assistance to the plaintiff, in contacting the first responders and in directing emergency support to the Pittsford Fire Department, resulted in a material delay in providing emergency medical assistance to the plaintiff and in transporting him to Strong where steps could be taken to try and arrest his decline, stabilize his condition, repair the hemorrhage and restore him to health.

23.    As a result of the aforementioned delay, the plaintiff s medical condition upon presentation to Strong was far more serious than it would otherwise have been.

24.    As a result of the aforementioned delay, the plaintiff sustained personal injuries that are long-lasting or permanent in nature.

25.    As a result of the aforementioned delay, the plaintiff experienced, and will experience, additional pain, suffering, discomfort, emotional distress and disability that he

otherwise would not have experienced.

## AS AND FOR A FIRST CAUSE OF ACTION

### Negligence

26.     Plaintiff repeats and realleges paragraphs "1" through "25" as if more fully set forth herein.

27.     Onstar and its employees and representatives, including the "expertly Trained Advisor" who responded to the plaintiff's call, where negligent and careless in their handling of the plaintif.' s request for emergency assistance.

28.     Onstar, its representatives and employees, including the "expertly Trained Advisor" who handled the plaintiff's request for emergency assistance, failed and/or refused to direct emergency support to the Pittsford Fire Department, as the plaintiff requested and as Onstar has represented to prospective and existing users of its "Safe & Sound" plan it will do.

29.     The delay in securing emergency assistance for the plaintiff, resulting from the failure and/or refusal by Onstar, its employees and representatives to direct emergency support to the Pittsford Fire Department, as the plaintiff requested, was due solely to the negligence and carelessness of Onstar with no fault or liability on the part of the plaintiff.

30.     As a result of the foregoing, the plaintiff has been damaged in an amount to be determined by the trier of fact.

## AS AND FOR A SECOND CAUSE OF ACTION

### Negligent Training

31.     Plaintiff repeats and realleges paragraph "1" through "30" as if more fully set fort herein.

32.     Upon information and belief, Onstar has established and maintains a training program

for its advisors in connection with its representation to perspective users and subscribers of its various in-vehicle safety and security plans that they will have "24-hour access to expertly trained, caring advisors."

33. In making the representation to prospective and existing users of its various plans that it employs "expertly trained, caring Advisors," Onstar has assumed a duty to "expertly train" its Advisors so that they can provide the promised services to subscribers without the miscues, miscommunications, ineptitude, carelessness and negligence manifest in the handling of plaintiff s request for emergency assistance.

34. Onstar, its employees and representatives, were negligent and careless in their training of the Advisor assigned to handle the plaintiff s request for emergency assistance.

35. As a result of the foregoing, the plaintiff has been damaged in an amount to be determined by the trier of fact.

AS AND FOR A THIRD CAUSE OF ACTION

**Fraud**

36. Plaintiff repeats and realleges paragraphs "1" through "34" as if more fully set forth herein.

37. In its advertising and promotional materials, including its website and in its owner's guide, Onstar represents to prospective and existing users that, in the event a subscriber needs emergency help, a live advisor can direct emergency support to a precise location.

38. In its advertising and promotional materials, including its website and in its owner's guide, Onstar represents to prospective and existing users that subscribers will have 24- hour access to expertly trained, caring Advisors.

39. In its advertising and promotional materials, including its website and in its

owner's guide, Onstar represents to prospective and existing users that "we can keep you safely connected in ways you never thought possible."

40.    In its advertising and promotional materials, including its website and in its owner's guide, Onstar represents to prospective and existing users that its advisors "are trained to respond to emergency situations and will work with local emergency providers to get help to you."

41.    In its advertising and promotional materials, including its website and in its owner's guide, Onstar represents to prospective and existing users that its "Safe & Sound" plan allows users to enjoy the peace of mind that comes with knowing that they and their loved ones are "fully protected" on the road

42.    These representations, and others made by Onstar, were designed to induce prospective users and subscribers to purchase Onstar's system and subscribe to its plans.

43.    Upon information and belief, Onstar, its employees and representatives, knew or should have known that these representations were false in that (1) its Advisors were not expertly trained, (2) in emergency situations like the one plaintiff confronted, its Advisors were unable or unwilling to work with local emergency providers to get help to subscribers or otherwise direct emergency support to an exact location, and (3) its users and their loved ones were not "fully protected".

44.    The plaintiff reasonably relied upon these or similar representations to his detriment and reasonably believed that the services promised by Onstar could and would be provided in a grave emergency like the one he faced on November 20, 2010.

45.    As a result of the foregoing, the plaintiff has been damaged in an amount to be determined by the trier of fact.

## REQUEST FOR RELIEF

**WHEREFORE,** plaintiff respectfully requests judgment as follows:

1. Compensatory damages in an amount to be determined by the trier of fact;

2. Punitive damages as permitted by law;

3. The costs and disbursements of this action; and

4. Such other and further relief as to this Court may seem just and proper.

DATED: March 8, 2011
Rochester, New York

WOODS OVIATT GILMAN LLP

By: _____
Donald W. O'Brien, Jr., Esq.
*Attorneys for Plaintiff*
700 Crossroads Building
2 State Street
Rochester, New York 14614
585.987.2800
dobrien@woodsoviatt.com

# EXHIBIT 2

 CT Corporation

**Service of Process
Transmittal**
03/28/2011
CT Log Number 518254306

TO:     Rosemarie Williams
        General Motors Legal Staff
        400 Renaissance Center, Mail Code 482-038-210
        Detroit, MI 48265-4000

RE:     **Process Served in New York**

FOR:    OnStar, LLC (Domestic State: DE)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Thomas C. Ioele, Pltf. vs. Onstar Corporation and OnStar, LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint |
| **COURT/AGENCY:** | Monroe County: Supreme Court, NY<br>Case # 112786 |
| **NATURE OF ACTION:** | Personal Injury - On 11/20/2010 - Pltf. was a user of the Onstar "Safe and Sound" plan - Pltf. contacted emergency services due to a spontaneous extra-cranial hemorrhage and the Onstar Advisor did nothing to assist Pltf., as a result of the delay Pltf. suffered additional pain and discomfort |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 03/28/2011 postmarked on 03/24/2011 |
| **JURISDICTION SERVED :** | New York |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after the service is complete |
| **ATTORNEY(S) / SENDER(S):** | Donald W. O'Brien, Jr.<br>Woods Oviatt Gilman LLP<br>700 Crossroads Building<br>2 State Street<br>Rochester, NY 14614<br>585-987-2800 |
| **REMARKS:** | Papers were served on the New York State Secretary of State on 03/16/2011. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/28/2011, Expected Purge Date: 04/02/2011<br>Image SOP<br>SOP Papers with Transmittal, via Fax, Rosemarie Williams 313-665-7572<br>Email Notification, GM Verification GMVerification@wolterskluwer.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Christopher Tilton<br>111 Eighth Avenue<br>New York, NY 10011<br>212-5909070 |

Page 1 of  1 / ND

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# EXHIBIT 3

State of New York - Department of State
Division of Corporations

Plaintiff/Petitioner:
IOELE, THOMAS C

Party Served:
ONSTAR, LLC

C/O CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NY 10011

Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 03/16/2011 pursuant to SECTION 303 OF THE LIMITED LIABILITY COMPANY
LAW. This copy is being transmitted pursuant to such statute to the address
provided for such purpose.

Very truly yours,
Division of Corporations